**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KHAMAL FOOKS, | ) | |
| | ) | Civil Action No. 19 – 1105 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| J. LUTHER, *Superintendent SCI* | ) | |
| *Smithfield*, ATTORNEY GENERAL | ) | |
| OF THE COMMONWEALTH OF | ) | |
| PENNSYLVANIA, and DISTRICT | ) | |
| ATTORNEY OF ALLEGHENY | ) | |
| COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM OPINION[1]**

Currently pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Khamal Fooks ("Petitioner") pursuant to 28 U.S.C. § 2254.  (ECF No. 4.) Petitioner challenges his judgment of sentence imposed on October 5, 2015, after he pled guilty pursuant to a negotiated plea deal to third-degree murder, criminal conspiracy and firearms not to be carried without a license at CP-02-CR-0008254-2013 in the Court of Common Pleas of Allegheny County, Pennsylvania.  For the following reasons, the Petition will be denied and a certificate of appealability will also be denied.

### A.      **Background**

Petitioner was charged by Criminal Information in the Court of Common Pleas of Allegheny County at CP-02-CR-0008254-2013 with one count each of criminal homicide,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  ECF Nos. 17 & 18.

robbery with the infliction of serious bodily injury, criminal conspiracy and carrying a firearms without a license, in connection with the death of victim Roger Griffin.  On October 5, 2015, Petitioner and the Commonwealth agreed to the following guilty plea:  (1) the degree of guilt for the homicide charge would be third-degree murder; (2) the Commonwealth would withdraw the robbery charge; (3) Petitioner would plead guilty to the remaining charges; and (4) Petitioner would receive a sentence of twenty (20) to forty (40) years in prison for third-degree murder, and no further sentence on the remaining charges.  The trial court accepted the negotiated plea after conducting an oral colloquy.  On the same date, in accordance with the plea agreement, the trial court sentenced Petitioner to a term of twenty (20) to forty (40) years in prison for third-degree murder, with no further penalty for the remaining charges.  (Resp't Exh. 21, ECF No. 14-1, pp.120-23.)

On January 8, 2016, Petitioner, through Attorney Thomas N. Farrell, filed a petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") seeking reinstatement of his post-sentence and appellate rights.  (Resp't Exh. 25, ECF No. 14-1, pp.131-36.)  On January 12, 2016, the court issued an order reinstating Petitioner's post-sentence and appellate rights. (Resp't Exh. 27, ECF No. 14-1, p.141.)

On January 19, 2016, Petitioner, through Attorney Farrell, filed Post-Sentence Motions, *nunc pro tunc*, claiming that he had received an excessive sentence.  (Resp't Exh. 28, ECF No. 14-1, pp.142-48.)  The court denied the motion on January 19, 2016.  (Resp't Exh. 29, ECF No. 14-1, p.149.)

On February 18, 2016, Petitioner, through Attorney Farrell, filed a notice of appeal to the Superior Court of Pennsylvania, which was docketed at No. 251 WDA 2016.  (Resp't Exh. 30, ECF No. 14-1, pp.150-67; Resp't Exh. 34, ECF No. 14-1, pp.176-78.)  On March 10, 2016,

Attorney Farrell filed a Concise Statement pursuant Pennsylvania Rule of Appellate Procedure 1925(c)(4) asserting that he believed the appeal to be wholly frivolous.  (Resp't Exh. 32, ECF No. 14-1, pp.169-72.)  The trial court issued its opinion on April 18, 2016.  (Resp't Exh. 33, ECF No. 14-1, pp.173-75.)  On May 16, 2016, Attorney Farrell filed with the Superior Court an Anders Brief and a Motion to Withdraw.  (Resp't Exh. 35, ECF No. 14-1, pp.179-207; Resp't Exh. 36, ECF No. 14-1, pp.208-15.)  In a Memorandum filed on August 16, 2016, the Superior Court granted counsel's motion to withdraw and dismissed the appeal.  (Resp't Exh. 38, ECF No. 255-61.)

On January 17, 2017, Petitioner filed a *pro se* PCRA petition.  (Resp't Exh. 39, ECF No. 14-1, pp.262-72.)  The PCRA court appointed Attorney Suzanne Swan to represent Petitioner. (Resp't Exh. 40, ECF No. 14-1, p.273.)  On June 26, 2017, Petitioner, through Attorney Swan, filed an Amended PCRA petition.  (Resp't Exh. 41, ECF No. 14-1, pp.274-88.)  An addendum to the PCRA was filed by Attorney Swan on July 10, 2017.  (Resp't Exh. 42, ECF No. 14-1, pp.289-291.)  On September 12, 2017, the PCRA court issued its notice of intent to dismiss the PCRA petition.  (Resp't Exh. 45, ECF No. 14-1, p.311.)  The PCRA petition was ultimately dismissed on November 7, 2017.  (Resp't Exh. 46, ECF No. 14-1, p.312.)  An appeal to the Superior Court followed, which was docketed at 1815 WDA 2017.  (Resp't Exh. 47, ECF No. 14-1, pp.313-21; Resp't Exh. 51, ECF No. 14-1, pp.333-36.)  The PCRA court filed its opinion on January 24, 2018.  (Resp't Exh. 50, ECF No. 14-1, pp.327-32.)  In a Memorandum filed on August 6, 2018, the Superior Court affirmed the dismissal of the PCRA petition.  (Resp't Exh. 54, ECF No. 14-1, pp.402-14.)  On August 29, 2018, Petitioner, through Attorney Swan, filed a Petition for Allowance of Appeal ("PAA") with the Supreme Court of Pennsylvania, which was docketed at 340 WAL 2018.  (Resp't Exh. 55, ECF No. 14-1, pp.415-17; Resp't Exh. 56, ECF

No. 14-1, pp.418-69.)  The PAA was denied on December 28, 2018.  (Resp't Exh. 58, ECF
No.14-1, p.471.)

Petitioner initiated the instant habeas proceedings on or about August 26, 2019.  (ECF
No. 1.)  His Petition was docketed on October 11, 2019.  (ECF No. 4.)  The Respondents filed
their Answer to the Petition on January 31, 2020.  (ECF No. 14.)

**B.     Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a
federal habeas court may overturn a state court's resolution of the merits of a constitutional issue
only if the state court decision was "contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United States."  28
U.S.C. § 2254(d)(1).  The phrase "clearly established Federal law," as the term is used in section
2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme
Court] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529
U.S. 362, 365 (2000).

The Supreme Court has identified two scenarios where a state court decision will fall into
section 2254(d)(1)'s "contrary to" clause.  First, a state court decision will be "contrary to"
clearly established federal law when the court "applies a rule that contradicts the governing law
set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  It set forth the following
example where a state court decision would be "contrary to" Strickland v. Washington, 466 U.S.
668 (1984), the familiar clearly established federal law governing ineffective assistance of
counsel claims.

> If a state court were to reject a prisoner's claim of ineffective assistance of
> counsel on the grounds that the prisoner had not established by a preponderance
> of the evidence that the result of his criminal proceeding would have been

> different, that decision would be 'diametrically different,' 'opposite in character
> or nature,' and 'mutually opposed' to our clearly established precedent because
> we held in <u>Strickland</u> that the prisoner need only demonstrate a 'reasonable
> probability that . . . the result of the proceeding would have been different.'

<u>Williams</u>, 529 U.S. at 405-06 (internal citations omitted).  The Supreme Court said that a state

court decision will also be "contrary to" clearly established federal law if it "confronts a set of

facts that are materially indistinguishable from a decision of this Court and nevertheless arrives

at a result different from our precedent."  <u>Id</u>. at 406.

The Supreme Court has said that under the "unreasonable application" clause of 28

U.S.C. § 2254(d)(1), a state court decision involves an unreasonable application of Supreme

Court precedent "if the state court identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

<u>Williams</u>, 529 U.S. at 407.  Under this standard, "a federal habeas court may not grant relief

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  <u>Id</u>. at 411.  The Supreme Court later expanded on this

interpretation of the "unreasonable application" clause explaining that the state court's decision

must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice.

<u>Locklyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  "As a condition for obtaining habeas corpus from

a federal court, a state prisoner must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement."

<u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011).

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits.  *See* <u>Tucker v. Superintendent Graterford SCI</u>, 677 F. App'x 768, 776 (3d Cir. 2017) (citing <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires.").  Indeed, the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient.  That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," <u>Williams</u>, 529 U.S. at 389, 120 S.Ct. 1495. *See also* <u>Horn v. Banks</u>, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard").  Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim *de novo* to evaluate if a constitutional violation occurred.  *See* <u>Lafler v. Cooper</u>, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

<u>Vickers v. Superintendent Graterford SCI</u>, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding,"

which requires review of whether there was sufficient evidence to support the state court's factual findings.  *See* <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Within this overarching standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision.  Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence.  <u>Lambert v. Blackwell</u>, 387 F.3d 210, 235 (3d Cir. 2004).

### C.   <u>Discussion</u>

Although Petitioner asserts three separate grounds for relief in his Petition, it appears that those three grounds are more appropriately construed as one single claim – ineffective assistance of counsel, which had the effect of producing an unknowing, unintelligent and involuntary plea.[2] Respondents submit, and the Court agrees, that the claim was properly exhausted in the state courts and is therefore properly before this Court.

In <u>Hill v. Lockhart</u>, 474 U.S. 52 (1984), the United States Supreme Court explained that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  <u>Id</u>. at 56 (internal quotations and citations omitted).  Where, as is the case here, the petitioner entered his plea upon the advice of counsel, the voluntariness of his plea depends on whether the advice counsel gave "was within the range of competence demanded of attorneys in criminal cases[,]" <u>id</u>. (internal quotations and citations omitted), and the petitioner must satisfy

---

[2] Petitioner raises the following three claims in his Petition: (1) ineffective counsel, (2) the guilty plea was not knowingly and voluntarily entered, and (3) ineffective counsel – failure to withdraw guilty plea.

the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), in order to prevail on his

challenge to his guilty plea.  Hill, 474 U.S. at 57-59.

Strickland recognized that a defendant's Sixth Amendment right to the assistance of

counsel for his defense entails the right to be represented by an attorney who meets a minimal

standard of competence.  466 U.S. at 685-87.  "[T]he Sixth Amendment does not guarantee the

right to perfect counsel; it promises only the right to effective assistance[.]"  Burt v. Titlow, 571

U.S. 12, 24 (2013).  Under Strickland, it is a petitioner's burden to establish that his "counsel's

representation fell below an objective standard of reasonableness."  466 U.S. at 688.  "This

requires showing that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  The Supreme Court has emphasized

that "counsel should be 'strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment[.]'"  Titlow, 571 U.S. at

22 (quoting Strickland, 466 U.S. at 690); Richter, 562 U.S. at 104 ("A court considering a claim

of ineffective assistance must apply a 'strong presumption' that counsel's representation was

within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at

689).

Strickland also requires that a petitioner demonstrate that he was prejudiced by his trial

counsel's deficient performance.  This places the burden on him to establish "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Strickland, 466 U.S. at 694.  When a petitioner claims that his

counsel's deficient performance deprived him of a trial by causing him to accept a plea, he "must

show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59; *see also* Vickers

v. Superintendent Graterford SCI, 858 F.3d 841, 857 (3d Cir. 2017) ("[W]here a defendant claims ineffective assistance based on a pre-trial process that caused him to forfeit a constitutional right, the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right.").

In his PCRA petition, Petitioner claimed that his guilty plea was not knowingly and voluntarily entered into, but unlawfully induced due to the ineffectiveness of trial counsel who advised and assured him that if he pleaded guilty to third-degree murder in exchange for a 20-40 year sentence, he would only have to serve half of his minimum term before he would be eligible for parole.  He also claimed that his counsel was ineffective for not moving to withdraw the unknowing, involuntary, and unlawfully induced plea.  The PCRA court, in support of its determination that Petitioner's petition warranted dismissal, concluded:

> Petitioner claims that trial counsel unlawfully induced him into pleading guilty.  The record demonstrates otherwise.  The record discloses that Petitioner understood the nature of the charges to which he plead guilty.  The Court reviewed the charges filed against Petitioner as well as the charge to which he ultimately pled guilty.  The Assistant District Attorney presented a factual basis for the guilty plea and Petitioner agreed with the presentation of the Assistant District Attorney.  Petitioner completed an exhaustive written plea colloquy (which is part of the record in this case) clearly evidencing his awareness of his pertinent constitutional rights including, but not limited to, the presumption of innocence, his right to a jury trial and the fact that this Court was not bound by the terms of the plea agreement.
>
> During the plea hearing, Petitioner specifically acknowledged that he was aware of the maximum penalties that could be imposed on him and, again, that nobody forced him to enter the plea.  The sentence of imprisonment of not less than 20 years nor more than 40 years was specifically negotiated by Petitioner and the record indicates that he agreed to that particular sentence.  Accordingly, while Petitioner submitted that he was unlawfully induced into pleading guilty as he did, the record demonstrates otherwise.  On the record and in the written colloquy, Petitioner acknowledged that no promises had been made to him outside the terms of the plea agreement as an inducement to plead guilty.  He also affirmed that

9

nobody, including his trial counsel, had promised him anything in exchange for the guilty plea other than the terms of the plea agreement that were placed on the record.  Petitioner stated that he had sufficient time to speak with his counsel and he was satisfied with trial counsel's representation.  It is clear from the record that Petitioner understood the charges to which he was pleading guilty, the constitutional rights he relinquished, the sentence he was to receive and the benefit he was receiving by accepting the plea agreement.  There is no question that Petitioner bargained for the plea agreement and he received the benefit of that bargain.

(Resp't Exh. 50, ECF No. 14-1, pp.331-32.)  On appeal, the Superior Court further emphasized the following testimony at the guilty plea hearing which revealed Petitioner's agreement to serve a sentence of imprisonment of 20 to 40 years as a result of the negotiated plea.

THE COURT [addressing the prosecutor]:  Is there a plea agreement, Mr. Broman?

MR. BROMAN:  Yes, Your Honor.  In return for The Defendant's plea to third degree [murder], The Commonwealth has agreed for a 20 to 40 year sentence.  The Commonwealth has agreed to proceed on that [as to count one] and withdraw count two [for] robbery.

THE COURT:  You're withdrawing count two.  You're keeping [count three for] conspiracy and [count four for] the firearm charge?

MR. BROMAN:  Correct, Your Honor.

THE COURT:  The agreement is that The Defendant will plead guilty to third degree [murder] and that he gets 20 to 40 years for the murder charge?

MR. BROMAN:  That's correct.

THE COURT:  Is that your understanding?

MR. THOMASSEY [TRIAL COUNSEL]:  It is, Your Honor.

THE COURT:  Mr. Fooks, did you understand that The Commonwealth has agreed to withdraw the [count one] murder charge as it is in the document, but amend it, so to speak, by qualifying it as murder in the third degree, taking away the murder one or murder two possibility.  Now it's murder three making that number 20 to 40 years, withdrawing the robbery, which takes it out of the penalty of murder by virtue of that and agree to conspiracy and the firearm [violation].

> You would be pleading guilty to those with no further penalty.  Is that what you agreed to do?
>
> THE DEFENDANT:  Yes, sir.

(Resp't Exh. 54, ECF No. 14-1, pp.408-09) (citing N.T., 10/5/2015, at 5-6.)  The Superior Court also emphasized the representations Petitioner made in the written guilty plea colloquy wherein he stated that nobody, including his attorney, had promised anything to him in exchange for the guilty plea other than the terms of the plea bargain and that he understood that he would be bound by the terms of the plea bargain.  Id., at p.410.  Finally, the Superior Court noted that at sentencing Petitioner reaffirmed that he understood his sentence and that he would be incarcerated for a minimum of 20 years.  Id.  After citing the applicable law with regard to ineffective assistance of counsel claims in Pennsylvania, the Superior Court concluded that Petitioner's claim lacked arguable merit because nothing in the record supported Petitioner's claim that plea counsel represented to him that he would be eligible for parole after serving half of his minimum sentence and because Petitioner was bound by the statements that he made in the oral and written plea colloquies, which affirmatively demonstrated his understanding of his sentence, specifically the fact that he would be incarcerated for a minimum of 20 years.  Id., at pp. 405, 411-412.

Because the Superior Court denied Petitioner's claim on the merits, this Court's review of it is very limited.  It is not for this Court to decide whether the Superior Court's decision was right or wrong.  Rather, under AEDPA's standard of review, as codified in relevant part at 28 U.S.C. § 2254(d)(1), it is Petitioner's burden to show that the Superior Court's adjudication was "contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or as codified in relevant part at 28

U.S.C. § 2254(d)(2), was an "unreasonable determination of the facts in light of the evidence presented."  Petitioner has not met his burden as to either.

Here, the "clearly established Federal law" is that which is set forth in <u>Strickland</u> (and its progeny, such as <u>Hill</u>).  *See*, *supra*.  The Superior Court analyzed Petitioner's claim under the three-pronged test for ineffective assistance of counsel claims in Pennsylvania, which requires a petitioner plead and prove:  "(1) the underlying claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced – that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different." [3]  (Resp't Exh. 54; ECF No. 14-1, p.405) (citing <u>Commonwealth v. Simpson</u>, 112 A.3d 1194, 1197 (Pa. 2015)).  The Superior Court concluded Petitioner's claim failed on the first prong, that it lacked arguable merit.[4]  The Third Circuit has held that this three-prong standard utilized by Pennsylvania courts is not "contrary to" <u>Strickland</u>, the standard enunciated by the United States Supreme Court in judging ineffectiveness claims, *see* <u>Wertz v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000), and given that the state court applied a standard that does not contradict <u>Strickland</u>, and the fact that the Court is unaware of a case with materially indistinguishable facts where the Supreme Court arrived at the opposite result, the Superior Court's adjudication of this claim satisfies review under the

---

[3] Pennsylvania law for judging ineffectiveness corresponds with the <u>Strickland</u> standard.  <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 976-77 (Pa. 1987); <u>Commonwealth v. Kimball</u>, 724 A.2d 326 (Pa. 1999).  Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and <u>Strickland</u> sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

[4] "The [arguable merit] prong is a threshold test requiring the court to determine if the issue underlying the ineffective assistance claim has arguable merit.  Only if the underlying claim has merit does a Pennsylvania court go on to assess whether counsel's performance was constitutionally ineffective and whether defendant was prejudiced thereby, as required by <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)."  <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 669 (3d Cir. 1996) (citing <u>Commonwealth v. McNeil</u>, 487 A.2d 802, 806 (1985)).

"contrary to" clause of § 2254(d)(1).  *See* <u>Williams</u>, 529 U.S. at 406 (a "run-of-the-mill" state-court decision applying the correct legal rule from Supreme Court decisions to the facts of a particular case does not fit within § 2254(d)(1)'s "contrary to" clause and should be reviewed under the "unreasonable application" clause).  The inquiry now becomes whether its decision was an objectively unreasonable application of that law.

Under the "unreasonable application" provision of § 2254(d)(1), the appropriate inquiry is whether the state courts' application of <u>Strickland</u> to a petitioner's ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>.  To satisfy his burden under § 2254(d)(1), a petitioner must do more than convince this Court that the Superior Court's decision denying a claim was incorrect.  <u>Dennis v. Secretary, Pennsylvania Department of Corrections</u>, 834 F.3d 263, 281 (3d Cir. 2016).  He must show that it "'was *objectively* unreasonable.'"  <u>Id</u>. (quoting <u>Williams</u>, 529 U.S. at 409).  This requires that he establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Richter</u>, 562 U.S. at 103.

Here, the Superior Court's determination that Petitioner's claim lacked arguable merit, and therefore there could be no finding that his counsel rendered ineffective assistance in the manner claimed, was not an unreasonable application of <u>Strickland</u> and its progeny.  First, there was nothing in the record to support Petitioner's claim that plea counsel represented to him that he would only have to serve half of his minimum term before he would be eligible for parole if he accepted the negotiated plea.  Indeed, the certification attached to Petitioner's Amended PCRA petition filed by Attorney Swan did not even support Petitioner's claim that plea counsel

13

advised him that he would only have to serve half of his minimum sentence.  *See* (Resp't Exh. 54, ECF No. 14-1, p.412) (noting that per the certification, plea counsel only stated that he would testify that he would have had no reasonable basis for failing to seek withdrawal of the plea "**if he knew that Mr. Fooks erroneously believed** he would only have to serve half of his minimum sentence, and that he would not have pleaded guilty if he knew he had to serve all of his minimum sentence.") (emphasis in original).  Furthermore, Petitioner confirmed on the record both at his oral plea colloquy and in his written plea colloquy that he understood his sentence, including the fact that he would have to serve a minimum of 20 years of imprisonment, and that nobody, including his attorney, promised him anything in exchange for pleading guilty. This was not an "objectively unreasonable" application of <u>Strickland</u> and its progeny.

Finally, Petitioner also has not met his burden under § 2254(d)(2) by demonstrating that the Superior Court's adjudication of his claim was an unreasonable determination of the facts in light of the state court record, which included both the written and oral plea colloquies, Petitioner's confirmations that he understood that he would serve a minimum of 20 years imprisonment and that nobody made any promises to him about what his sentence would be other than what was included in the plea agreement.  The Superior Court had before it the requisite evidence necessary for its adjudication to withstand review under § 2254(d)(2)'s deferential standard.

### D.   <u>Conclusion</u>

Based on the aforementioned reasons, the Petition will be denied and a certificate of appealability will also be denied because jurists of reason would not find it debatable that Petitioner's claim lacks merit.  *See* 28 U.S.C. § 2253 ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.");

Slack v. McDaniel, 529 U.S. 473, 484 (2000) (Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  A separate Order will issue.

Dated: May 13, 2021.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Khamal Fooks
       MJ8861
       SCI Forest
       P.O. Box 945
       286 Woodland Drive
       Marienville, PA  16239

       Counsel of Record
       (via CM/ECF electronic mail)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHAMAL FOOKS, | ) | |
| | ) | Civil Action No. 19 – 1105 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| J. LUTHER, *Superintendent SCI* | ) | |
| *Smithfield*, ATTORNEY GENERAL | ) | |
| OF THE COMMONWEALTH OF | ) | |
| PENNSYLVANIA, and DISTRICT | ) | |
| ATTORNEY OF ALLEGHENY | ) | |
| COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 13th day of May 2021;

**IT IS HEREBY ORDERED** that, for the reasons set forth in the accompanying

Memorandum Opinion, the Petition for Writ of Habeas Corpus (ECF No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of

Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(A) of the Federal

Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as

provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Khamal Fooks
      MJ8861

16

SCI Forest
P.O. Box 945
286 Woodland Drive
Marienville, PA  16239

Counsel of Record
(*via CM/ECF electronic mail*)