**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KHAMAL FOOKS,           )
                                  )    Case No. 2:19-cv-01105
           *Petitioner*,    )
                                    )
          v.                  )    Magistrate Judge Kezia O. L. Taylor
                                    )
J. LUTHER, *Superintendent SCI*   )
*Smithfield*, ATTORNEY GENERAL   )
OF THE COMMONWEALTH OF     )
PENNSYLVANIA, and DISTRICT     )
ATTORNEY OF ALLEGHENY       )
COUNTY,                        )
                                    )
          *Respondents*.    )

**<u>MEMORANDUM OPINION</u>**

This case is before the Court[1] pursuant to the Mandate issued by the Third Circuit Court of Appeals on April 17, 2024, which remanded this case for an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel that was raised in his Petition for Writ of Habeas Corpus filed on October 11, 2019.[2]  *See* ECF No. 30.  Pursuant to the Third Circuit's instructions, an evidentiary hearing was held on October 9, 2024.  For the following reasons, the Court finds that Petitioner has not demonstrated that counsel was ineffective.  The Petition will therefore be denied and a certificate of appealability will also be denied.

**A.  <u>Relevant Procedural Background</u>**

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  ECF Nos. 17 & 18.  This case was previously assigned to the Honorable Lisa Pupo Lenihan, who has since retired.  It was reassigned to the undersigned on March 28, 2024.

[2] The Petition challenges Petitioner's judgment of sentence at CP-02-CR-0008254-2013 in the Allegheny County Court of Common Pleas.

In 2013, Petitioner was charged in Allegheny County, Pennsylvania, with one count each of criminal homicide, robbery with the infliction of serious bodily injury, criminal conspiracy and carrying a firearm without a license.  *See* ECF No. 14-1 at 1-3, 4-6.  The charges stemmed from the death of victim Roger Griffin on May 17, 2013.  *Id*. at 4.  In exchange for pleading guilty, Petitioner and the Commonwealth agreed to the following: (1) the degree of guilt for the homicide charge would be third-degree murder, (2) the Commonwealth would withdraw the robbery charge, (3) Petitioner would plead guilty to the remaining charges, and (4) Petitioner would receive a sentence of twenty to forty years of incarceration for third-degree murder and no further sentence on the remaining charges.  On October 5, 2015, Petitioner appeared before Judge Anthony Mariani ("Judge Mariani") for a guilty plea proceeding.  Petitioner was represented at the hearing by Attorney Patrick J. Thomassey ("Attorney Thomassey"), who had been appointed in early 2014 after Petitioner's previous attorney moved to withdraw.  *Id*. at 58.  Petitioner initialed and signed an eleven-page "Guilty Plea Explanation of Defendant's Rights" form and underwent an oral guilty plea colloquy.  *Id*. at 109-19.  The trial court accepted the guilty plea and plea agreement and imposed a term of twenty to forty years of incarceration for third-degree murder.  *Id*. at 120-23. The Pennsylvania Superior Court affirmed the judgment of sentence on August 16, 2016.  *Id*. at 255.

In June 2017, Petitioner, through counsel, filed a petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") claiming that Attorney Thomassey was ineffective in that he had misadvised him about his eligibility for parole.  *Id*. at 274-91.  Petitioner claimed that Attorney Thomassey misadvised him that he would be eligible for parole in ten years, when in fact he would have to serve at least twenty, and that if he had known the truth then he would not have pleaded

guilty. *Id*. at 278-83. The PCRA court denied the petition without conducting an evidentiary hearing, and the Superior Court affirmed noting that Petitioner was "bound by the statements he made in the oral and written plea colloquies, and cannot now contradict those statements to challenge the lawfulness of the plea." *Id*. at 411. In support of its conclusion that there was no merit to Petitioner's claim that trial counsel induced him to enter the negotiated guilty plea by advising him he would only have to serve 10 years of his 20-year minimum sentence, the appellate court specifically stated as follows:

> We add that the certification PCRA counsel has attached to Fooks' amended petition fails to advance Fooks' claim that plea counsel advised him he would only serve 10 years' imprisonment. In the certification, counsel only avers plea counsel would testify he would have had no reasonable basis for failing to seek withdrawal of the plea "**if he knew that Mr. Fooks erroneously believed** he would only have to serve half of his minimum sentence, and that he would not have pleaded guilty if he knew he had to serve all of his minimum sentence." In addition, the lack of any challenge at the time of sentencing also undermines Fooks' claim. In this regard, it is important to note that the trial judge explicitly specified that Fooks would be incarcerated for a minimum of 20 years, Fooks affirmatively indicated his understanding of his sentence when questioned by the trial judge, and neither Fooks nor plea counsel raised any question or objection.
>
> Consequently, in light of the foregoing, we conclude there is no arguable merit to Fooks' claim that counsel induced him to enter the negotiated guilty plea by promising him he would only have to serve 10 years of his 20-year minimum sentence. Accordingly, we affirm the PCRA court's decision that dismissed Fooks' first PCRA petition without an evidentiary hearing.

*Id*. at 412 (emphasis within) (internal citations to the record omitted). Petitioner sought but was denied an allowance of appeal from the Pennsylvania Supreme Court. *Id*. at 418-71.

Petitioner initiated these federal habeas proceedings in August 2019 and his Petition was filed on October 11, 2019. ECF No. 4. On May 13, 2021, United States Magistrate Judge Lisa Lenihan denied the Petition after finding that Petitioner had not established that the state court's decision was contrary to or an unreasonable application of clearly established federal law pursuant

to 28 U.S.C. § 2254(d). ECF No. 23. No evidentiary hearing was held. On appeal, the Third Circuit determined that while Petitioner was not entitled to relief on the existing record, nothing restricted Petitioner's access to an evidentiary hearing in this case because Petitioner presented facts that, if proven, would render his attorney's performance objectively unreasonable under federal law, making the state court's decision unreasonable under § 2254(d). ECF No. 30-2. Thus, the Third Circuit remanded with instructions to hold an evidentiary hearing on Petitioner's claim that Attorney Thomassey misadvised him about parole, causing him to take the plea deal. *Id*.

Following remand, the Court appointed the Federal Public Defender for the Western District of Pennsylvania for the limited purpose of representing Petitioner in the evidentiary hearing on his claim of ineffective assistance of counsel. ECF No. 31. After several continuances, the hearing was held on October 9, 2024. ECF Nos. 47-49. Following the hearing, the parties submitted Proposed Findings of Facts and Conclusions of Law. ECF Nos. 47, 52, 53, 56. The matter is now ripe for review.

**B. <u>Summary of Relevant Testimony</u>**

The following is a summary of the relevant testimony given at the evidentiary hearing, along with pertinent exhibits admitted into the record in connection with that testimony.

Petitioner testified that he was charged with criminal homicide and other crimes in Allegheny County in the summer of 2013 when he was 18-years old. ECF No. 48 at 10. While not his first court-appointed attorney, at some point Attorney Thomassey was appointed to represent him in connection with those charges. *Id*. According to Petitioner, Attorney Thomassey visited him in the Allegheny County Jail approximately five times prior to October 5, 2015, the day his case was set for trial. *Id*. at 11-12. On that day, Petitioner was prepared to proceed to trial,

but Attorney Thomassey communicated a plea offer to him where Petitioner would receive a sentence of twenty to forty years of incarceration if he would plead guilty to third-degree murder. *Id*. at 12-13.  Petitioner testified that Attorney Thomassey told him that he "would be spending the rest of [his] life in prison" if he didn't take the offer, but Petitioner told him that he wanted to go to trial.  *Id*. at 13.  Attorney Thomassey informed Petitioner that he did not believe that was a good idea and arranged for Petitioner to speak with his mother, Anica Mosby, his brother, Malik Norfleet,[3] and his then-girlfriend, Jordan Ham, all of whom were present at court that day.  *Id*. at 13-14.  Petitioner testified that at that meeting, which he explained occurred in a conference room seated around a table, Attorney Thomassey stated that he would either get twenty to forty years or spend the rest of his life in prison.  *Id*. at 14-15.  Petitioner also testified that Attorney Thomassey stated that he would be eligible for parole in half his minimum sentence.  *Id*. at 15.  He admitted that neither he nor his family asked any questions about parole eligibility but that the possibility of getting paroled after serving ten years "made a difference" when weighing his options.  *Id*.  He ultimately decided it "would be the best way to go[,]" so he decided to take the plea offer.  *Id*. at 15-16.  Petitioner admitted that at the time of his plea, he had no knowledge of the Pennsylvania parole system other than what he was told by Attorney Thomassey, and his understanding, pursuant to their discussion, was that he would be eligible for parole in half of his minimum sentence.  *Id*. at 25.  At the hearing, the parties stipulated to the following statement:  "The Pennsylvania Parole Board's power to parole may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court

---

[3] Malik Norfleet passed away on September 21, 2021.  *Id*. at 14.

in its sentence or by the Board of Pardons in a sentence which has been reduced by commutation." *Id*. at 48 (citing 61 Pa.C.S.A. § 6137(a)(3)).

Petitioner pled guilty to third-degree murder on October 5, 2015. When asked, he admitted that he stated on the record at his plea hearing that he understood that he would be sentenced for a minimum of twenty years and that no promises other than what had been stated on the record had been made to him. *Id*. at 25.

Petitioner testified that either "a couple" or "a few" days after pleading guilty, he learned from other inmates that he would not be eligible for parole until he served his 20-year minimum sentence. *Id*. at 26, 46. On October 9, 2015, four days after pleading guilty, he wrote to Attorney Thomassey. *Id*. at 26. The entirety of that letter, which was admitted into the record as Exhibit B, reads as follows:

> Dear Patrick Thomassey
>
> I would like for you to be withdrawn from my case and to withdraw my plea. I'm pretty sure my mom already contacted you on this matter. Thank you for your services. God bless.
>
> Khamal Fooks

Petitioner testified that he wrote another letter to Attorney Thomassey on October 29, 2015. *Id*. at 27. The entirety of that letter, which was admitted into the record as Exhibit C, reads as follows:

> Hey Pat how are you? I wrote you on the 9th regarding to a withdraw of my plea I took. I don't know when you got the letter because the mail here has been going out and coming in 2 and 3 weeks late. But I just wanted to let you know that I do want to withdraw my plea and take this case to trial. I don't feel you did what you were suppose to do for me. **There are a lot of things that don't make sense and too many loop holes for me to do 20-40 years of my life in prison** So if you can will you get back to me regarding this matter as soon as possible? Please and thank you.
>
> God bless

Khamal Fooks

(emphasis added).  Petitioner testified that he also wrote a letter to Judge Mariani on October 9,

2015.  *Id*. 28-29.  The entirety of that letter, which was admitted into the record as Exhibit D, reads

as follows:

> To the Honorable Anthony M. Mariani
>
> I am Khamal Fooks.  I was just in your court room October 5th, 2015 and took a 20 to 40 plea agreement.  Well I just wanted to withdraw my plea and fight my case. **The reason I wanted to withdraw my plea is because I don't feel as though I should take a plea for something I didn't do**.  And I wanted to remove Patrick Thomassey from my case **because I don't feel like he fought for me as he should have** he's basically incriminating me.  So I would like for him to be withdrawn from my case and appointed new counsel.
>
> I pray in the name of Jesus in this letter.  I find grace from the Honorable Judge Anthony M. Mariani.
>
> Respectfully Submitted
>
> > Khamal Fooks
> > May God bless you

(emphasis added).  Petitioner testified that he wrote another letter to Judge Mariani on October 23,

2015.  *Id*. at 29.  The entirety of that letter, which was admitted into the record as Exhibit E, reads

as follows.

> To The Honorable Anthony M. Mariani
>
> I am Khamal Fooks.  I wrote you 2 weeks ago an 10/9/15.  I wrote stating that I would like to withdraw my plea that I took 10/5/15 before your court room. **I also wanted to withdraw Patrick Thomassey from my case because I don't think the plea I took was a reasonable one and I honestly didn't want to take it**.  Is there any way that you can appoint me counsel who will help me bring the truth to the light in my case?  I wrote Thomassey on the 9th also asking him to withdraw from my case.  I would highly appreciate it if I can be heard before a jury **because I feel as though I'm not guilty of any degree of murder**.  Please and thank you. God Bless.

7

Respectfully
Khamal Fooks

Thank you for your time.

(emphasis added).  Finally, Petitioner testified that he wrote to the prosecutor in his case, Assistant

District Attorney Russel Broman, on November 5, 2015.  *Id*. at 30.  The entirety of that letter,

admitted into the record as Exhibit F, reads as follows:

> Dear Mr. Broman
>
> I am Khamal Fooks writing in regards to a withdrawal of my guilty plea.  I informed Honorable Judge Anthony M. Mariani on October 9th, 2015 and on October 23rd, 2015.  I also informed my attorney Patrick J. Thomassey on October 9th, 2015 and on October 29th, 2015 stating I wanted to withdraw my plea and also withdraw him from my case.  I'm not sure if he put the motion in for the withdrawal of the guilty plea but he did put the motion in to withdraw appearance.  Pa.R.Crim.P. 720(B)(1) affords a defendant within 10 days after the imposition of sentence the right to file a post-sentence motion which would include a motion to challenge or withdraw a plea of guilty; motions for judgment of acquittal or new trial; a motion for arrest of judgment; and any motion to reconsider or modify sentence.  Knowing I informed Mariani and Thomassey both 4 days after trial and still no response to a withdrawal of my plea.  So if you can can you see why I haven't been answered?  Because I would like to take this case to trial.  Please and thank you.
>
> Khamal Fooks

Petitioner concluded his testimony by stating that he was set on going to trial until he was

told about the possibility of parole after serving half of his minimum sentence and he would not

have pled guilty had he known that information was not correct.  *Id*. at 43.  On cross-examination,

however, Petitioner admitted that he did not indicate in any of his letters that he was misled

regarding when he would be eligible for parole and that the first time the issue was raised was in

his counseled PCRA petition filed by Attorney Suzanne Swan in June 2017.  *Id*. at 44-45.

Next, Attorney Thomassey testified. He stated that he has been a practicing criminal attorney for forty-eight years. *Id*. at 49. He stated that he has represented 16,500 clients in his career, and at any given time he carries a caseload of approximately two-hundred cases. *Id*. He stated that he represented Petitioner in connection with his criminal charges, but he admitted that Petitioner's case did not particularly stand out in his mind due to the length of time that had passed. *Id*. at 50-51. Upon reviewing the docket, he noted that he represented Petitioner from February 14, 2014, though October of 2015. *Id*. at 52. While he agreed that he had discussions with Petitioner about the plea agreement that was offered, and he stated that he had "some memory" of those discussions, he admitted that he did not have a verbatim recollection of their conversations. *Id*. at 53. He admitted that he did not recall what Petitioner's specific reaction was when he communicated the plea offer but stated that he told Petitioner that he "should take it." *Id*. at 53-54, 55. He explained that he felt as if they could not take the case to trial because there was overwhelming evidence of Petitioner's guilt and explained that he would "be doing life" if he went to trial. *Id*. at 55, 57.

Attorney Thomassey testified that he could not recall whether Petitioner's case was scheduled for trial or a guilty plea proceeding on October 5, 2015. *Id*. at 54-55. He also could not specifically recall conversations with Petitioner and his family on that day but stated that "the family can't communicate with the defendant when he's in custody." *Id*. at 56. When asked whether he has ever made arrangements for a client who is in custody to meet with family at the courthouse, he stated that it is rare but believed that it has happened maybe "once or twice" in his career. *Id*. at 56-57, 58.

9

When asked whether there was any set amount of time a person needs to serve before that person becomes parole eligible, Attorney Thomassey answered that "they have to do their minimum" before they're allowed parole. *Id*. at 58. He agreed that it "is possible" for someone to get paroled earlier, for example for "health reasons," but it is "not likely." *Id*. at 58-59. He stated that he does "not necessarily" tell clients about the possibility of parole when reviewing options with them. *Id*. at 59.

He testified that he did not specifically recall hearing from Petitioner or his family after Petitioner was sentenced on October 5, 2015, or recall the letters that Petitioner wrote thereafter, but he knew he withdrew from Petitioner's case "because he wanted to appeal." *Id*. at 60-61.

On cross-examination, Attorney Thomassey testified that he absolutely did not recall advising Petitioner that he would only have to serve half of his minimum sentence before he was parole eligible, and he stated that is not the law in Pennsylvania and that he has never advised his clients as such. *Id*. at 62-63.

Petitioner's mother, Anica Mosby ("Mosby"), testified that she went to court with her son, Malik Norfleet, and Petitioner's friend, Jordan Ham, on October 5, 2015, to support Petitioner at his trial. *Id*. at 64-65. According to Mosby, they were waiting in the hallway when Attorney Thomassey came up and advised them that they needed to talk to Petitioner because "if he doesn't take the plea . . . he will be spending the rest of his life in prison." *Id*. at 66. She explained that Attorney Thomassey told her that "if he takes the 20 to 40-year sentence, then he could possibly be out in ten years[,]" but if not then "I'll be carrying my son out of jail in a cardboard box." *Id*. She stated that he then arranged for them to talk to Petitioner, which she said occurred around a table in a conference room in the back of the courtroom. *Id*. at 66-67. She testified that Petitioner

"did not want to take the plea," but she begged him to take it because she "was scared" for her son's life. *Id*. at 67. When asked how it happened, she answered:

> Well, me and my son was crying and pleading to him, like, take the deal, Khamal. You'll be out in ten years. Just take the deal. Khamal still didn't want to take it. Like, he wanted to go to trial. That he felt like he didn't do anything wrong. But we're like, please, just take the deal. He said you're already guilty because you were there, so please take the deal. Then he took the deal.

*Id*. at 67-68. She testified that "after a while" Petitioner figured out that he would have to serve at least twenty years before he would become parole eligible. *Id*. at 68. She stated that eventually she was asked by one of Petitioner's lawyers to provide a statement of what Attorney Thomassey told them at the hearing. *Id*. at 69. Her statement, dated July 1, 2019, nearly four years post Petitioner's guilty plea, was admitted as Exhibit Q and reads in its entirety as follows:

> To whom it may concern:

> Hello I am Anica Mosby Khamal Fooks mother on October, 5 2015 Patrick Thomassy stated to me that he couldn't help my son and if he doesn't take the plea deal he would spend the rest of his life in Prison. That if he takes the 20-40 plea deal he would be home in 10 years. I believe him and told Khamal to take it. Khamal didn't want to take the plea so I convinced him to take deal so that he could come home in 10 years.

> Truly yours,
> Anica Mosby

Mosby further testified that her other son, Petitioner's older brother, Malik, who was also present at court on October 5, 2015, but who passed away on September 21, 2021, provided a notarized statement that day. *Id*. at 70-71. That statement, also dated July 1, 2019, was admitted as Exhibit R, and reads in its entirety as follows:

> To whom it may concern:

> My name is Malik Norfleet I am Khamal Fooks older brother, On October 5, 2015 I was present when Patrick Thomassy told my mother to tell my brother

11

Khamal Fooks to take the 20-40 plea deal and that he would be out in 10 years or
spend the rest of his life in Prison.

> Truly yours,
> Malik Norfleet

When asked on cross-examination where the meeting with Petitioner and Attorney Thomassey
occurred, Mosby said that it was in a conference room on the third floor of the courthouse and that
Petitioner was already in there when they went in to speak to him. *Id*. at 73.

The next witness to testify at the hearing was Jordan Ham ("Ham"). Ham testified that she
met Petitioner in 2012 when they attended the Academy Charter School together. *Id*. at 75. She
stated that she continued to have contact with Petitioner when he was at the Allegheny County Jail
after he was arrested in 2013 and that she attended his court hearings and was present in court on
October 5, 2015, along with Petitioner's mother and brother. *Id*. at 75-76. She testified to waiting
in the hallway prior to the hearing that day when Attorney Thomassey came up to speak to them.
*Id*. at 76-77. According to Ham, Attorney Thomassey told them that "he had something good
going, it was a 20 to 40, but he was looking at 10. He could possibly talk to the judge." *Id*. at 77.
She explained that they got a chance to speak with Petitioner and Attorney Thomassey in a
conference room behind the courtroom where Thomassey explained that the plea offer would be
20 to 40 and that "he could get the ten for [Petitioner] if he could talk to the judge." *Id*. at 77-78.
When asked what her understanding was of how much time Petitioner would have to serve, she
stated "ten years." *Id*. at 78. She testified that they were told Petitioner would "come home in a
box" if he did not take the plea deal. *Id*. On cross-examination, Ham testified that it was her
understanding that Attorney Thomassey "would be talking to a judge after he was assigned to get
this in motion for ten years." *Id*. at 79.

12

The final witness to testify at the evidentiary hearing was Jessica Yalenty, a trial investigator with the Federal Public Defender's Office in Pittsburgh, Pennsylvania. She testified that she and Petitioner's counsel met with Attorney Thomassey at his office on August 23, 2024, and at that meeting, Attorney Thomassey expressed a belief that there was no minimum amount of time that a person needed to serve before they can become parole eligible. *Id*. at 86-97. She further testified that Attorney Thomassey explained that he had seen clients be released prior to serving their minimum sentence. *Id*. at 88. With that, no further witnesses were called, and the evidentiary hearing concluded.

## C. Relevant Legal Standards

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. *Id*. at 685-87. Under *Strickland*, it is a petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that this same two-part *Strickland* standard governs claims of ineffective assistance of counsel arising out of the plea process. *Id*. at 57. The Court stated that where "a defendant is represented by counsel during the

plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the wide range of competence demanded of attorneys in criminal cases.'" *Id*. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To satisfy the prejudice component, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

### D.  Discussion

The Third Circuit's opinion on appeal states, "Fooks says his lawyer misadvised him about parole, causing him to take a plea deal. If he is right, he has a claim for ineffective assistance of counsel. Yet, neither the state nor the federal court gave him a chance to prove his claim. So we will remand for the court to hold an evidentiary hearing and give him that chance." ECF No. 30-2 at 9. Petitioner has now had the chance to prove his claim, but the Court finds that he has not met his burden of demonstrating that counsel was ineffective.

Petitioner testified at the hearing that within a couple or a few days after pleading guilty, he was better informed by other inmates about parole eligibility and, at that time, understood that Attorney Thomassey had given him inaccurate information upon which he relied and tendered a plea. If that is true, Petitioner's own words in writing, and evidence admitted in court, undermine his testimony and credibility.

The Court accepts that as of October 9, 2015, Petitioner regretted his plea. He said as much in writing to both Attorney Thomassey and Judge Mariani. He wrote to them both on that day requesting to withdraw his plea and requesting that Attorney Thomassey withdraw as counsel. He wrote to them both again two to three weeks later, as well as to Assistant District Attorney Broman,

14

expressing the same. However, not once in any of Petitioner's letters did Petitioner mention that Attorney Thomassey provided him inaccurate information about parole. Nowhere did he mention that he wanted to withdraw his plea because he was misadvised and believed that he would only have to serve ten years of his sentence and/or be eligible for parole in ten years. Instead, he wrote that he wanted to withdraw his plea because he was not guilty of any degree of homicide, he believed that Attorney Thomassey did not fight hard enough for him and that there were "too many loopholes" for him to spend twenty to forty years of his life in prison. But, again, conspicuously absent from his letters is any indication that his decision to plead guilty was influenced by inaccurate advice given to him by Attorney Thomassey about when he would be eligible for parole. Thus, the Court cannot credit Petitioner's in-court testimony about the events of October 5, 2015, or the other testimonial evidence introduced at the hearing of which he relies, because his admitted evidence in the form of letters to Attorney Thomassey, Judge Mariani, and Assistant District Attorney Broman in the days and weeks that followed his guilty plea, which is the best evidence of the circumstances surrounding his decision to want to withdraw his plea, belies his testimony. What is in those letters, or more importantly, what is absent from them, serves as persuasive evidence that Attorney Thomassey did not mislead or misadvise Petitioner into believing that he could be paroled before serving his minimum sentence.

The Court is appreciative of the pressurized circumstances surrounding Petitioner's decision to plead guilty or face trial and possibly spend the rest of his life in prison. He was twenty years old at the time he pled guilty, and his mother and friend testified that they were told he would "come home in a box" if he did not take the plea deal. Obviously, there were weighty consequences at stake. There is no doubt that the decision to plead guilty was a difficult one for

Petitioner, as it is for many defendants, and there is no doubt that he later came to regret his decision, as reflected in each of his letters. However, Petitioner had the ultimate authority to decide whether to accept the plea offer extended to him, and he has not shown that Attorney Thomassey provided ineffective assistance during that decision-making process.

A separate Order denying the Petition, as well as a certificate of appealability, will be issued.

Dated: June 27, 2025.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc:    Counsel of record
       (*via CM/ECF electronic mail*)